UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA RODRIGUEZ, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Case No. 2:15-cv-01824-NIQA |
| : | |
| INFINITE CARE, INC., : | |
| : | |
| Defendant. : | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT
AND FOR APPROVAL OF ATTORNEYS FEES AND COSTS**

Plaintiff Jessica Rodriguez ("Plaintiff")[1], by and through her respective counsel of record, submit this Motion for Final Approval of Settlement Agreement and for Approval of Attorneys Fees and Costs (the "Final Approval Motion").

In support of the Final Approval Motion, Plaintiff respectfully submits the following:

**I. Background and Settlement Agreement**

   A. Factual and Procedural Background

On April 8, 2015, Plaintiff filed a Class Action Complaint and Jury Demand against Defendant (the "Complaint"). The Complaint alleges a Rule 23 class claim asserting that the Defendant violated the Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. §§ 2101 – 2109) ("WARN Act"). The Complaint alleges that Defendant employed more than 100 employees who worked at least 4,000 hours per week within the United States; and that Defendant ordered a plant closing, as defined by the WARN Act, on or about February 27, 2015 at its facility located at 6423 Rising Sun Avenue, Philadelphia, Pennsylvania 19111 (the "Facility") that resulted in the loss of employment for at least 50 non-part time employees who worked at or reported to the Facility. The Complaint further alleges that a class should be

---

[1] After the filing of the Complaint, there was a Stipulation of Dismissal filed on December 22, 2015 concerning Plaintiffs Ashley White and La'Quisha Harris.

certified consisting of the Plaintiff and the other similarly situated former employees terminated from the Facility, without cause on their part, on or about February 27, 2015, and thereafter, as the reasonably expected consequence of the plant closing, as defined by the WARN Act. The Complaint further alleges that the Plaintiff and the other similarly situated former employees terminated on or about February 27, 2015, and thereafter, as the reasonably foreseeable consequence of the plant closing are "affected employees", as defined by 29 U.S.C. §2101(a)(5); that these former employees did not receive from the Defendant 60 days' advance written notice of termination, as required by the WARN Act; and that the Defendant failed to pay them 60 days' wages and fringe benefits, as required by the WARN Act.  The Complaint further alleges that the proposed class meets the requirements of Fed. R. Civ. P. 23.

On July 7, 2015, the Defendant filed its Answer to the Complaint (the "Answer").  In its Answer, the Defendant asserted numerous affirmative defenses including the "unforeseeable business circumstances" exception.  Defendant also asserted its actions were taken in good faith.

Also on July 7, 2015, a scheduling order was entered and the parties commenced written discovery.  Following extensive discovery, including written discovery requests and responses, voluminous document production, and non-party discovery, the Parties agreed to mediate the WARN Act claims, along with wage and overtime claims made by separate lawsuit (Rodriguez, et al. v. Infinite Care, Inc., Civil Action No. 2:15-cv-02492-HB).  A mediation was ultimately held on January 28, 2016 with The Honorable Elizabeth T. Hey.  While Counsel for the Plaintiff and Defendant disagree as to whether Defendant has any obligation or liability under the WARN Act with respect to the claims asserted in the Complaint, in order to avoid further costly litigation and the uncertainties and risks associated therewith, the Parties agreed at the mediation to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of

action arising from the Complaint, and to enter into a Settlement Agreement, which includes certification of a proposed Settlement Class.

On March 31, 2016, Plaintiff and Defendant (the "Parties") filed their Joint Motion for Order (1) Preliminarily Approving Settlement Agreement; (2) Approving Form and Manner of Notice to the Proposed Settlement Class; (3) Scheduling a Final Fairness Hearing for the Final Consideration and Approval of the Settlement; and (4) Finally Approving the Settlement (the "Motion for Preliminary Approval") with the Court.  [ECF 28].

The Court found that the proposed notice of settlement (the "Class Notice"):

> "…meets the requirements of Fed. R. Civ. P. 23(c)(2)(B)"... "The Class Notice sufficiently describes, in clear, concise and easily understood language, the nature of the action and claims, respectively, the class certified, and the issues and defenses. The Class Notice also states that the Settlement Agreement, if approved, will be binding on all Settlement Class Members. The Notice also summarizes the terms of the Settlement Agreement, the right of and manner for each Settlement Class Member to opt-out or object to the Settlement Agreement, the right of each Settlement Class Member to appear by counsel at the Fairness Hearing, and the fact that more information is available from Class Counsel upon request. Further, the Notice informs the Settlement Class Members that the Settlement Agreement provides for the release of their claims as identified in the Settlement Agreement, and the payment of Class Counsel's attorneys' fees and litigation expenses. *See* Fed. R. Civ. P. 23(h)."

[ECF 30, at 2-3].

The Class Notices were mailed to the last known addresses of each of the 1,430 Settlement Class Members on April 22, 2016.  *See* Declaration of M. Vance McCrary, ¶ 9 (the "McCrary Decl.").[2]  The objection and opt-out deadline contained in the Class Notice was June 24, 2016, and there have been no objections received from any Settlement Class Member, *Id.*, and only 8 opt-outs, *Id.*[3]

---

[2] A copy of this declaration is attached hereto as Exhibit A.

[3] The opt-outs include: Gerthy Bijoux; Alisa Parker; Roberto Rodriguez; Lourdes Santos; Jackie Stevens; Elena Zorrilla; Mayerlin Zorrilla; and Mery Zorrilla.

B. <u>The Settlement Agreement</u>

The Agreement reflects the result of arms' length, good faith negotiations which took place before and during a mediation with The Honorable Elizabeth T. Hey.

The Agreement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act, and the various cases and regulations interpreting the Act. In this regard, the Plaintiff and the Defendant disagree as to whether the Defendant has any obligation or liability under the WARN Act with respect to the Settlement Class Members' claims. If Defendant ended up successful in the litigation, the Settlement Class Members would receive nothing. If the Plaintiff ended up successful in the litigation, however, the Settlement Class Members could have a claim against the Defendant for as much as $3,000,000. Even if Plaintiff was successful in establishing a $3,000,000 claim against Defendant, there is no chance of recovering that amount. The Defendant has pled guilty to felonies including the offense of Corrupt Organizations and Medicaid Fraud, and the only money it has remaining is in an escrow account established pursuant to a plea agreement with the Commonwealth of Pennsylvania. The $472,000 settlement amount in this case represents the entirety of the funds remaining in the escrow account. While originally there was more than that in the account, it has been depleted to this amount after other amounts were used for other purposes which benefitted the former employees, including, a settlement with the Commonwealth of Pennsylvania Department of Labor and Industry Bureau of Labor Law Compliance for back wages and overtime.

To avoid extensive, costly litigation over these issues, the Plaintiff and the Defendant, through their respective counsel, engaged in significant negotiations regarding a possible consensual resolution of this litigation. As a result of the Parties' negotiations, and as fully set forth in the Agreement, the Plaintiff and the Defendant wish to fully and finally compromise,

settle and resolve any and all demands, claims, damages and causes of action, present or future, which relate to or are based on employment of the Plaintiff and the other proposed Settlement Class Members with Defendant including but not limited to the WARN Act, the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law and/or the Pennsylvania Minimum Wage Act, state statutory law (excluding workers' compensation laws, unemployment compensation laws and discrimination laws) or common law (*e.g.*, unjust enrichment, quantum meruit) concerning their compensation, hours of work, pay for those hours of work, or Defendant's payroll practices, on the terms and conditions set forth in the Agreement.

## II. Argument in Support of Final Approval of the Settlement

### A. There is a strong presumption in favor of settlement

It is well settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). There is a strong presumption in favor of voluntary settlement agreements. *See, e.g. Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) and *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595 citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 782 (3d Cir. 1995). "This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, at 595. "In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.* Accordingly, a court should approve a class settlement if, following a hearing, the

5

court determines that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) are met and that the settlement is fair, reasonable and adequate under Federal Rule of Civil Procedure 23(e).

      B.      <u>Rule 23(a) factors are met in this case</u>

The numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the Proposed Settlement Class consists of approximately 1430 former employees, clearly making joinder impracticable. The commonality factor of Fed. R. Civ. P. 23(a)(2) is met because there are numerous over-arching questions of law or fact common to every member of the Proposed Settlement Class, namely, (a) whether the class members lost their employment as a result of "plant closing" as defined in the WARN Act; (b) whether the Defendant was excused from the 60-day notice requirement under the WARN Act through the "unforeseeable business circumstances" exception; and (c) in the event of liability, whether the Defendant should be allowed to reduce its liability because it acted in good faith. The typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of [Plaintiff who is] the representative party [is] typical of the claims . . . of the class." The Plaintiff has the same over-arching claim based on the same set of facts, as the other proposed Settlement Class Members since all the layoffs were conducted at or about the same time and were based on a single set of circumstances. The requirements of Fed. R. Civ. P. 23(a)(4) are met based on the following. The Plaintiff, who is the proposed class representative, has and will continue to diligently prosecute this action, and has no conflict of interest with the other proposed Settlement Class Members. In addition, the Plaintiff has engaged highly skilled and experienced counsel, namely, The Gardner Firm, P.C. and Lankenau & Miller LLP, which have, between them, collectively been appointed as class counsel in more than 90 WARN actions. McCrary Decl., ¶¶ 16-23. Class Counsel are well qualified and experienced to represent the Settlement Class Members.

C.  Rule 23(b) factors are met in this case

The common questions of law and fact detailed above, which affect all members of the proposed Settlement Class, predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons: (a) no proposed Settlement Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act; (b) no other litigation concerning the WARN Act rights of any proposed Settlement Class Member is currently pending to the Parties' knowledge; (c) concentrating all potential litigation concerning the WARN Act rights of the proposed Settlement Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Settlement Class Members and (d) administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Settlement Class Members have been established from Infinite Care, Inc.'s books and records.

D.  The settlement is fair, reasonable and adequate under Rule 23(e)

The Third Circuit identifies nine factors to consider when determining whether a proposed class action settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risk of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).

1. <u>The Complexity, Expense, and Likely Duration of the Litigation Weighs in Favor of Settlement</u>

This litigation has been ongoing for nearly a year and a half. Although the Parties have engaged in extensive discovery, additional discovery would be needed to set this case for trial. Moving this case to trial would also require significant motion practice. This process would be time consuming for Plaintiff, Defendant and the Court, as would trial. Moreover, even if Plaintiff succeeded at trial, the $472,000 settlement amount in this case represents the entirety of the funds remaining in the escrow account of this now defunct Defendant, and there is no chance of any greater recovery than what has been recovered through this settlement.

2. <u>The Reaction of the Class to the Settlement</u>

There have been no objections received concerning the Settlement, and only eight opt-outs. McCrary Decl., ¶ 9. This strongly favors final approval. *See Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (holding that a "small number of objectors is a good indication of the fairness of the settlement"); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2007) (same); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").[4]

3. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

Since the beginning of this litigation nearly a year and a half ago, Plaintiff's counsel interviewed the Plaintiff and other former employees regarding the facts surrounding the

---

[4] *See also*, *Dillard v. City of Foley*, 926 F. Supp. 1053, 1063 (M.D. Ala. 1996); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 56-57 (S.D.N.Y. 1993); *In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

terminations and their potential claims, researched the law, filed her Complaint, the Parties exchanged initial disclosures, written discovery requests and responses, there was voluminous document production, non-party discovery and ultimately a mediation presided over by The Honorable Elizabeth T. Hey.  McCrary Decl., ¶ 6.  Hence, both sides have been afforded an adequate opportunity to conduct sufficient discovery in order to be well-apprised of the legal and factual issues presented, as well as the strengths and weaknesses of their cases.  Both sides made a well-informed decision to enter into the Settlement Agreement.  *See, e.g.*, *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D. N.Y. 1985) (approving a settlement because the parties had engaged in sufficient discovery and motion practice and both parties had a "clear view of the strengths and weaknesses of their cases"); *In re Nationwide Fin. Servs. Litig.*, Case No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *14-15 (S.D. Ohio Aug. 18, 2009) (approving a settlement in part because "the Settlement occurred only after Plaintiffs and their counsel had the opportunity to assess the facts supporting their claims, the legal and factual defenses likely to be raised by Defendants, the difficulty of establishing damages, and the risks of continued litigation").

        4.   <u>The Risks of Establishing Liability</u>

Plaintiff feels strongly about the merits of her case.  Defendant though does assert plausible defenses to Plaintiff's claims, including the unforeseeable business circumstances" defense (29 U.S.C. § 2102(b)(2)(A)) and "good faith" (29 U.S.C. § 2104(a)(4)).  In this particular case, it would make no sense to take any risk going any further attempting to establish liability, when the settlement reached provides the Class with all remaining funds in the escrow account of this now defunct Defendant, and there is no chance of any greater recovery than what has been recovered through this settlement.

5. The Risks of Establishing Damages

Plaintiff believes she can establish damages, primarily through the Defendant's company records, but there is some risk of not being able to do so with sufficient certainty. The Defendant's payroll practices were a large part of the ultimate downfall of the Defendant, and the payroll records might not prove to be a reliable source by which to prove damages at a trial. And, at the end of the day, the settlement reached provides the Class with all remaining funds in the escrow account of this now defunct Defendant, and so there is no reason to take any risks by going any further with this litigation.

6. The Risks of Maintaining the Class Action Through Trial

Plaintiff does not believe there is much risk in maintaining the class action through trial. WARN Act cases are particularly amenable to class treatment. *See e.g. Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 293-94 (S.D. Ind. 2013) (quoting *Moreno v. DFG Foods, LLC*, No. 02 C 4019, 2003 U.S. Dist. LEXIS 8700, at *18 (N.D. Ill. May 21, 2003)).[5] However, even a small risk, is not one worth taking given the settlement terms reached in this case.

7. The Ability of the Defendant to Withstand a Greater Judgment

As noted above, the Defendant has no ability to withstand a greater judgment.

8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery;

and

9. The Range of Reasonableness of the Settlement Fund in Light of All the Attendant Risks of Litigation

---

[5] *See also, Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-622009 U.S. Dist. LEXIS 69765, at *17 – 18 (N.D. W.Va. Aug. 10, 2009); *In re Spring Ford Indus.*, No. 02-BK-15015-DWS, 2004 Bankr. LEXIS 112, *24 (Bankr. E.D. Pa. Jan. 20, 2004).

If Plaintiff was one hundred percent successful in litigating this claim to its conclusion, the Settlement Class Members could have a claim against the Defendant for as much as $3,000,000 (and, to be clear, there are risks with going forward attempting to be one hundred percent successful in litigating this claim to a final judgment).  However, as discussed *supra*, even if Plaintiff was successful in establishing a $3,000,000 claim against Defendant, there is no chance of recovering that amount.  The $472,000 settlement amount in this case represents all that is left of the now defunct Defendant, and is the best possible recovery to be had in this case.

      E.      <u>The Attorneys' Fees and Costs are Reasonable</u>

Although courts in the Third Circuit may apply either the percentage-of-recovery or lodestar method to determine the reasonableness of an attorney's fee request, *see Sullivan v DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (en banc), the percentage-of-recovery method has long been preferred in common fund cases.  *See In re Prudential*, 148 F.3d at 333-34.  Courts then generally use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award, while at the same time not displacing its primary reliance on the percentage method.  *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).

To determine the reasonableness of a percentage-of-recovery fee award, the Court must consider the following ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re* Prudential, 148 F.3d 283: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by class members to the settlement and/or the fees requested; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel;

11

(7) the awards in similar cases; (8) the value of the benefits attributable to other groups such as government agencies conducting investigations; (9) the percentage that would have been negotiated in a private contingent fee agreement; and (10) any innovative terms of the settlement.  *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

1. <u>The Size of the Fund Created and the Number of Persons Benefited</u>

The fund created in this case is all that is left of the now defunct Defendant, and is the best possible recovery to be had in this case.  It will benefit over 1400 former employees.  The benefit is not illusory, but real dollars and cents which will go, sooner rather than later, into the pockets of these workers who lost their jobs suddenly and without warning.

2. <u>The Presence or Absence of Substantial Objections by Class Members to the Settlement and/or the Fees Requested</u>

There have been no objections received concerning the Settlement or the fees requested.  The class notice, which was mailed to Settlement Class Members on April 22, 2016, described, in clear, concise and easily understood language, the nature of the action and claims, the class certified, and the issues and defenses.  The notice summarized the terms of the Settlement Agreement, including Class Counsel's request for a one-third attorneys fee plus expenses of litigation, and explained the right of and manner for each Settlement Class Member to object, should s/he so choose.  Further, the notice explained the right to appear at the Fairness Hearing, and that more information is available from Class Counsel upon request.  The notice also contained an "Exhibit A" which showed Settlement Class Members their "Gross Projected Recovery Under The Settlement

Agreement," and their "Net Projected Recovery Under The Settlement Agreement, After Deduction of Attorney Fees and Costs."[6]

### 3. The Skill and Efficiency of the Attorneys Involved

Plaintiff is represented by highly skilled and experienced counsel. McCrary Decl., ¶¶ 16-23. Lankenau & Miller has been appointed class counsel in over 90 WARN Act cases. *Id*. The Gardner Firm has served as class counsel in more than 40 WARN Act cases. *Id*. Plaintiff's counsel's experience makes them well-suited to have negotiated the best possible resolution in this case, which is embodied in the Settlement Agreement.

### 4. The Complexity and Duration of the Litigation

WARN Act class action litigation is highly specialized and particularly complex. WARN Act class action litigation is made more difficult because employers, such as Defendant, almost invariably can afford to hire very resourceful and high quality lawyers. This case was no exception. Steven Ludwig, at Fox Rothschild LLP, who led the defense in this case, very ably represented the Defendant in this matter. Since the inception of this litigation nearly a year and a half ago, Plaintiff's counsel interviewed the Plaintiff and other former employees regarding the facts surrounding the terminations and their potential claims, researched the law, filed her Complaint, the Parties exchanged initial disclosures, written discovery requests and responses, there was voluminous document production, non-party discovery and ultimately a mediation presided over by The Honorable Elizabeth T. Hey.

### 5. The Risk of Nonpayment

This litigation was undertaken on a contingent fee basis. Plaintiff's counsel has worked for nearly a year and a half without any compensation at all, and with the risk that

---

[6] A copy of the class notice which was mailed to Settlement Class Members is attached hereto as Exhibit B.

they might never be paid for their work, unless they were successful. WARN Act cases are particularly risky cases to take on a contingent basis, since the defendants are almost always distressed companies in troubled financial condition (thus leading to the necessity for mass layoffs or a plant closing). In this case, the Defendant had ceased operations and terminated its employees by the time Class Counsel decided to risk nonpayment and file the case and dedicate themselves to trying to find a recovery for these former employees.

### 6. The Amount of Time Devoted to the Case by Plaintiff's Counsel

The one-third fee requested ($155,666.67) is roughly equal to if Plaintiff's counsel had been paid their hourly rates for the hours they have spent litigating this case. McCrary Decl., ¶ 25. In addition, Plaintiff's counsel has incurred reasonable expenses and costs associated with the litigation of this case. Full detail concerning those costs are detailed in the McCrary affidavit. McCrary Decl. ¶ 26. Plaintiff's counsel will spend additional time and incur additional costs related to travel and lodging for attendance at the final fairness hearing set on September 27, 2016, and still more time and costs related to administration of the settlement, once Court approved. McCrary Decl. ¶¶ 25-26. Plaintiff's counsel expects to spend at least another 30 hours of time in connection with this case to see it to conclusion. Plaintiff's counsel expects additional costs to be rather minimal, and in any event not to cause the total costs in the case to exceed $10,000.00. McCrary Decl. ¶ 26. Plaintiff's counsel is requesting the Court approve these reasonable costs up to $10,000.00.

### 7. The Awards in Similar Cases

An award of one-third of the common fund as an attorney's fee to class counsel is common in WARN Act class action settlements. "[I]n more than 30 WARN actions class counsel was awarded a one-third fee." Guippone v. BH S&B Holdings, LLC, Case No. 09 Civ.

01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *27-28 (S.D.N.Y. Oct. 28, 2011) (citing In re Consolidated Freightways Corporation, Case No. 02-24284-MG (Bankr. C.D. Cal.); Powell v. Creighton Incorporated, Case No. 1:01CV779 (M.D.N.C.); In re CTC Communications Group, Inc., Case No. 02-12873 (PJW) (Bankr. D. Del.); Madley v. Florida Cypress Gardens, Inc., Case No. 8:03-CV-00795-T-17TBM (M.D. Fla.); In re Dollar Land, Inc., Case No. 02-14547 (Bankr. E.D. Pa); Johnson v. GMAC Mortgage Group, Inc., Case No. C04-2004-LRR, (N.D. Iowa); Morris v. Greenwood Mills. Inc., Civil Action No. 8:02-221-24, (D. S.C.); In re Inacom Corp, Case No. 00-2426 (PJW) (Bankr. D. Del.); Teligent, Inc., Case No.: 01-12974(SMB) (S.D.N.Y.); Bandel v. L.F. Brands Marketing, Inc., Civil Action No. 04 CV 1672 (CSH) (S.D.N.Y.); Baker v. The National Machinery Company, Case No. 3:02CV7444 (N.D. Ohio); Deninno v. Penn American Coal Company, L.P., Civil Action No. 03-0320 (D. W.D. Pa.); In re Pliant Systems, Inc., Case No. 01-01264-5 ATS (Bankr. E.D.N.C.); Adkins v. Pritchard-Brown, Case No. 5:03CV129-OC 10 GRJ, (M.D. Fla.); Gibson v. Sonic Foundry, Incorporated, Case No. CV-03-4062 SVW (CD. Cal.); In re Thomaston Mills, Inc., Case No. 01-52544 (RFH) (Bankr. M.D. Ga); Ballentine v. Triad International Maintenance Corporation, Case No. 0 1-1 0357 (E.D. Miss.); Trout v. Transcom USA, Case No. 1:03-cv-0537-LJM-WTL, (S.D. Ind.); Padgett v. Wireless Retail, Inc., Case No. CV04 1170 PHX-SR, (D. Ariz.)).  In addition to the cases cited by the Guippone Court, other courts have awarded a third of the common fund as attorneys' fees in WARN Act class action settlements. See Kizer v. Summit Partners, L.P., Case No. 1:11-CV-38 (E.D. Tenn. Jul. 10, 2012); Nieves v. Community Choice Health Plan of Westchester, Inc., Case No. 7:08-CV-321 (S.D.N.Y. May 8, 2012); Robbins v. Durham School Services, L.P., Case No. 1:09-CV-609 (W.D. Tex. May 31, 2011); Hackworth v. Telespectrum Worldwide, Inc., Case No. 3:04-CV-1271 (S.D. W.Va. Aug. 3, 2006).

> 8. <u>The Value of the Benefits Attributable to Other Groups Such as Government Agencies Conducting Investigations</u>

While there was no investigation of the alleged WARN Act violation by anyone other than Plaintiff and Class Counsel, there is value attributable to the Commonwealth of Pennsylvania who was thoughtful enough, in its criminal plea deal with the Defendant, to demand that the amount of money above what it settled for itself, related to a separate dispute with the Defendant, be put aside in escrow for the purpose of benefitting employees.  That move helped ensure that the Defendant did not squander the remaining money while Plaintiff moved forward in her litigation attempting to reach final judgment and collect.  Notably, it was the two litigations filed by Plaintiff – this WARN Act case and a separate case related to back pay and overtime claims – that brought attention to the plight of the employees and were noted in the plea deal.  See ¶ 10 of the Plea Agreement, attached as Exhibit A to the McCrary Declaration filed simultaneously herewith ("In light of the civil cases filed against the defendant by the defendant's former employees regarding unpaid wages and/or overtime payments, including RODRIGUEZ et al. v. INFINITE CARE, INC. [Docket 2:15-cv-01824-NIQA, United States District Court for the Eastern District of Pennsylvania, and RODRIGUEZ et al. v. INFINITE CARE, INC. [Docket 2:15-cv-02492-HB, United States District Court for the Eastern District of Pennsylvania … the residual funds … shall be placed in a separate escrow for the purpose of creating a fund to settle the financial claims stemming from the pending civil litigation …").

> 9. <u>The Percentage That Would Have Been Negotiated in a Private Contingent Fee Agreement</u>

This litigation was undertaken on a contingent fee basis.  The Plaintiff agreed to the one-third fee in her contract with Plaintiff's counsel.  It has been the expectation of Plaintiff and Plaintiff's counsel since the inception of the litigation that Plaintiff's counsel

would be paid a percentage of the fund created, if Plaintiff's counsel were successful enough to create one and the Court approved the one-third fee.

### 10. Innovative Terms of the Settlement

While there really is not any term of the Settlement that Class Counsel would describe as innovative, it is worth noting that Plaintiff and Class Counsel were the only ones to bring a WARN Act lawsuit against the Defendant, and but for those efforts the Settlement Class Members likely would not have recovered anything with regard to a WARN Act recovery. While there is no new or different term in the settlement itself that could not be found in other settlement agreements like it in other cases, Plaintiff and Class Counsel being willing to give it a go at a claim that no one else brought was "different" in its own way, since others did not do it.

### F. Conclusion

In view of the foregoing, Plaintiff respectfully requests the Court find that the Settlement Agreement satisfies the requirements for certification under Federal Rule of Civil Procedure 23(a) and (b), and that the Settlement Agreement is fair, reasonable and adequate under Federal Rule of Civil Procedure 23(e). Additionally, Plaintiff respectfully requests the Court find Class Counsel's requested attorneys fees and costs reasonable, and finally approve the Settlement Agreement following the final Fairness Hearing.

Submitted: September 19, 2016

/s/ M. Vance McCrary

**THE GARDNER FIRM, P.C.**
Mary E. Olsen
M. Vance McCrary
210 S. Washington Ave.
Post Office Drawer 3103
Mobile, Alabama 36652
P: (251) 433-8100
F: (251) 433-8181
molsen@thegardnerfirm.com
vmccrary@thegardnerfirm.com

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 1100
New York, New York 10038
P: (212) 581-5005
F: (212) 581-2122
sjm@lankmill.com

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2016, I filed a copy of the foregoing with the Court electronically via the Court's CM/ECF system thereby causing electronic service of the same on all counsel of record in this matter.

/s/ M. Vance McCrary
*Attorney for Plaintiff*