Ex. A to McCrary Declaration



IN THE COURT OF COMMON PLEAS
DAUPHIN COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
: CP-22-CR-1750-2015
V. :
: OTN T617762-5
INFINITE CARE, INC. :
:

## PLEA AGREEMENT

The Commonwealth of Pennsylvania ("Commonwealth") and Infinite Care, Inc., ("defendant"), a corporation organized and existing under the laws of Pennsylvania, hereby enters into the following Plea Agreement:

**RIGHTS AND WAIVER OF DEFENDANT**

1. The defendant understands its rights:
(a) to be represented by an attorney;
(b) to plead not guilty to any criminal charge brought against it;
(c) to have a trial by jury, at which it would be presumed not guilty of the charge and the Commonwealth of Pennsylvania would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;
(d) to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;
(e) to appeal its conviction if it is found guilty; and
(f) to appeal the imposition of sentence against it.

2. The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(f) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including a challenge to the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence.

**AGREEMENT TO PLEAD GUILTY**

3. The defendant will plead guilty to the offense of Corrupt Organizations, 18 Pa.C.S. § 911 (B) (3), a Felony of the First Degree, which provides for a maximum term of imprisonment of twenty (20) years and a maximum fine of $25,000.00, and Medicaid Fraud, 62 P.S. § 1407 (a)(1), a Felony of the Third Degree, which provides for a maximum term of imprisonment of seven (7) years and a maximum fine of $15,000.00. The predicate offenses to the Corrupt Organizations charge will include, but not be limited to, each and every

identified offense indictable under Tampering with Public Records (F3) – 18 Pa. C.S.A. §4911(a)(1)(2)(3) and Theft by Deception (F3) – 18 Pa. C.S.A. §3922(a)(1)(2)(3).

4. The defendant will plead guilty to the criminal charge described in Paragraph 3 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court as set forth in Paragraph 5 below.

**FACTUAL BASIS FOR OFFENSE CHARGED**

5. Had this case gone to trial, the Commonwealth would have presented evidence sufficient to prove the following facts:

(a) For purposes of this Plea Agreement, the "relevant period" is that period from February 10, 2010 through February 28, 2014. During the relevant period, the defendant was a corporation organized and existing under the laws of the Commonwealth. The defendant had its principal place of business in the City of Philadelphia. During the relevant period, the defendant was a Medical Assistance provider and was engaged in providing skilled nursing services in a waiver program. The defendant is enrolled as a Medical Assistance provider, Provider No. 102202901.

(b) The federal government "waives" medical assistance rules for institutional care in order for the Commonwealth to use the funds for supports and services beyond those covered by the Medical Assistance (also referred to as Medicaid) program that enable a person to remain in a community setting rather than being admitted to a Long Term Care Facility. In the Commonwealth, the Department of Human Services administers and funds multiple Medical Assistance/Medicaid waiver programs.

(c) As Medical Assistance provider, the defendant received Medicaid compensation.

(d) The defendant's registered office address is 6423 Rising Sun Avenue, Philadelphia, PA. The defendant contracted with the Department of Human Services ("DHS")(formerly known as Department of Public Welfare), P.O. Box 2675, Harrisburg, PA to provide home health care services to Medical Assistance ("MA") recipients. The defendant uses the information provided by its caregivers as the basis for submitting a claim electronically (or by paper) to DHS. The claim is processed by DHS and payment is authorized through DHS Comptroller's Office. Claims are paid by the Pennsylvania Treasury Department, Finance Building, Harrisburg, PA. Payment is subsequently issued to the defendant.

(e) During the relevant period, Julio Miranda ("Miranda") was the defendant's Director of Nursing. Wanda Di Martinez ("De Martinez") worked for the

2

defendant for approximately 17 years and her last date of employment was March 22, 2014. Londono eventually promoted De Martinez to Director of the Home Health Aides. De Martinez was in charge of scheduling and managing the HHAs. After working for the defendant for approximately 5 years, De Martinez had a 7% ownership percentage in the company. As for Miranda, he was given 25% ownership of Infinite Care, the defendant.

(f) During the relevant period, instead of sending an RN or LPN to provide nursing services to the disabled client, the defendant would pay family members to cover the nursing shift. The defendant would bill DHS for the nursing services that were not provided. In addition, LPNs and home health aides (HHAs) were covering shifts for RNs yet the defendant would bill for the services as if an RN had provided the service for the disabled client. The defendant would bill DHS for nursing services which were billed at a higher rate than HHA services. As a result of the above practices, the defendant provided their disabled clients with under-qualified and unqualified care while at the same time greatly benefitting financially by billing DHS at a higher rate of care. After the defendant was served with the Grand Jury subpoena on February 27, 2014, a meeting took place where the decision was made to destroy and/or replace the fraudulent paperwork that was utilized for billing the Commonwealth. Through the course of the investigation, numerous nurses and parents were interviewed and/or testified before the Grand Jury. These nurses confirmed that family members were covering nurses' shifts on a regular basis for the defendant's clients. Nurses also identified numerous progress notes which contained their forged signatures for nursing services they did not provide to clients they had never met. Some parents admitted to getting paid by the defendant for covering nurses' shifts regarding their respective family members. In addition, numerous parents testified before the Grand Jury regarding the practice of being asked to sign off on progress notes even though there was no nurse's signature on it.

**SENTENCING AGREEMENT**

6. The defendant agrees to a sentence of ten (10) years of probation.

7. The defendant agrees to pay restitution to the DHS in one lump sum of $6,100,000.00, minus any court cost and/or fees which will be determined at the bar of the court with subsequent payment directed by Order of the Court. This amount represents restitution pursuant to 62 P.S. § 1407 (b)(2)(i) and an increase amount pursuant to 62 P.S. § 1407 (b)(2)(ii). This one lump sum payment of $6,100,000.00 (minus court costs and/or fees) will be paid directly to DHS from the account(s) holding the defendant's unpaid claims ($8,171,112.79) held in payment suspension by the Commonwealth Comptroller and/or Pennsylvania Department of Treasury and/or DHS since February 10, 2015. By Order of the Court, the defendant agrees to relinquish control of this one lump sum payment and the money will be transferred to the

3

control of DHS.

8. The defendant agrees that it will not present evidence or arguments to the Court in opposition to the sentencing recommendation made to the Court by the Commonwealth.

9. The Commonwealth contends that had this case gone to trial, the Commonwealth would have presented evidence to prove that the loss resulting from the charged offense is sufficient to justify the restitution amount pursuant to, 62 P.S. § 1407 (b)(i)(ii). Because the defendant has agreed to the amount of the fines and restitution, no estimates or percentages of fraudulent billings will be presented to the Court. For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

10. In light of the civil cases filed against the defendant by the defendant's former employees regarding unpaid wages and/or overtime payments, including RODRIGUEZ et al v. INFINITE CARE, INC. [Docket 2:15-cv-01824-NIQA, United States District Court for the Eastern District of Pennsylvania, and RODRIGUEZ et al v. INFINITE CARE, INC. et al [Docket 2:15-cv-02492-HB] United States District Court for the Eastern District of Pennsylvania, the recommended sentence provides the following disposition: the residual funds (those funds remaining after payment of the above described $6,100,000.00) in the escrow account(s) of the defendant's unpaid claims which have been held in payment suspension by the Commonwealth Comptroller and/or Pennsylvania Department of Treasury and/or DHS since February 10, 2015 shall be placed in a separate escrow for the purpose of creating a fund to settle the financial claims stemming from the pending civil litigation filed by defendant's unpaid employees. This escrow account, established by the defendant's attorney, William M. Davis, Esquire, is located at Wells Fargo Bank, under the name of McMonagle, Perri, McHugh, P.C., Account # 3891456695, Routing # 121000248.

11. The residual funds, those funds remaining after payment of the above described $6,100,000.00, are approximately $2,071,112.79.

12. As a consequence of pleading guilty to the above stated charges, the defendant will subsequently receive notice in which the defendant will be precluded and/or excluded from directly or indirectly participating in the Medical Assistance Program, including billing, for not less than five (5) years from the date of this sentencing.

13. Notwithstanding that the defendant is placed on probation for ten (10) years and is precluded/excluded from directly or indirectly participating in the Medical Assistance Program, including billing, for not less than five (5) years, the defendant agrees that promptly after the resolution of this plea but no later than 120 days from the date of the plea, the charter and franchise of Infinite Care, the

4

defendant, will be surrendered and the corporation dissolved. The defendant agrees that Infinite Care shall discontinue transacting all business except that which is necessary or incidental to liquidation and winding up affairs. The defendant will dissolve the corporation with Department of State of Pennsylvania, officially ending its existence as a state-registered business entity. A certificate of dissolution will be filed with the Department of State of Pennsylvania within 120 days of the date of the sentencing. If after 120 days there is no settlement regarding the pending civil litigation, a hearing before this Court will be scheduled within ten (10) days of the expiration of the 120 day period in which a new 120 day extension may be granted.

**REPRESENTATION BY COUNSEL**

14. The defendant has been represented by counsel and is fully satisfied that its attorney(s) have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

**VOLUNTARY PLEA**

15. The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The Commonwealth has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

KATHLEEN G. KANE
ATTORNEY GENERAL

_____
Christian Sondergaard, Jr.
Senior Deputy Attorney General

8/13/15
_____
Date

_____
William M. Davis, Esquire
Counsel, Infinite Care, Inc.

8/13/2015
_____
Date

_____
Luis Londono
Owner and President, Infinite Care, Inc.

8-13-2015
_____
Date

5