**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESSICA RODRIGUEZ** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 15-1824** |
| **v.** | : | |
| | : | **CLASS ACTION** |
| **INFINITE CARE, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                              NOVEMBER 17, 2016

## MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion for final approval of settlement agreement and for approval of attorneys' fees and costs* filed by Plaintiff Jessica Rodriguez ("Plaintiff")[1] pursuant to Federal Rule of Civil Procedure ("Rule") 23.  [ECF 33].  Previously, this Court had granted preliminary approval to the Class Action Settlement Agreement.  [ECF 29, 30].  A fairness hearing was scheduled and held on September 27, 2016, to entertain oral argument on Plaintiff's unopposed motion for final approval.  Counsel for both parties appeared.  For the reasons stated herein, the motion for final approval of the class action settlement is granted.

## BACKGROUND

On April 8, 2015, Plaintiff, on behalf of herself and all others similarly situated,[2] filed a class action complaint (the "complaint"), against Defendant Infinite Care, Inc. ("Defendant"), alleging that Defendant violated the *Worker Adjustment and Retraining Notification Act of 1988*,

---

[1]        Though this action was brought by Plaintiff on behalf of herself and all others similarly situated, this Memorandum Opinion will use the term "Plaintiff" rather than "Plaintiffs."

[2]        The complaint also named La'Quisha Harris and Ashley White as plaintiffs in this action.  [ECF 1 at 1].  On December 22, 2015, these two plaintiffs were dismissed from this case.  [ECF 26].

29 U.S.C. §§ 2101-2109 *et seq.* (the "WARN Act"),[3] when it ordered the closing of a facility plant at 6423 Rising Sun Avenue, Philadelphia, Pennsylvania, 19111 (the "Facility"), on February 27, 2015, resulting in the termination of Plaintiff's employment and that of over 1,000 similarly situated employees who worked at or reported to the Facility.   [ECF 1 ¶¶ 4-7)].   Plaintiff avers that the class of plaintiffs included all employees who worked at the Facility and were terminated when the plant closed on February 27, 2015.   (*Id.* ¶ 13).

On July 7, 2015, Defendant filed its answer to the complaint and asserted numerous affirmative defenses, including *inter alia,* the "unforeseeable business circumstances" exception, a good faith defense.   [ECF 11 at 4].   On July 7, 2015, a scheduling order was entered and the parties commenced written discovery.   [ECF 14].   Following extensive discovery that included written discovery requests and responses, voluminous document production, and non-party discovery, the parties agreed to mediate the WARN Act claims, and the wage and overtime claims asserted under a separate lawsuit, *Rodriguez, et al. v. Infinite Care, Inc.*, Civil Action No. 2:15-cv-02492-HB.   On January 28, 2016, a mediation conference was held where counsel for Plaintiff and Defendant agreed (1) to avoid further costly litigation and the uncertainties and risks associated therewith; (2) to settle, compromise, and resolve any and all demands, claims, damages, and causes of action arising from the complaint, and (3) to enter into a settlement agreement which included certification of the proposed settlement class.

On March 31, 2016, Plaintiff and Defendant filed a *Joint Motion for Order (1) Preliminarily Approving Settlement Agreement; (2) Approving Form and Manner of Notice to the Proposed Settlement Class; (3) Scheduling a Final Fairness Hearing for the Final Consideration and Approval of the Settlement; and (4) Finally Approving the Settlement* (the

---

[3]     The WARN Act provides, *inter alia*, that a defendant is liable for the failure to provide former employees at least 60 days advance written notice of termination.

"Motion for Preliminary Approval"). [ECF 28]. This Court granted the motion for preliminary approval and found, *inter alia,* that the proposed notice of settlement (the "Class Notice") met "the requirements of Fed.R.Civ.P. 23(c)(2)(B)," and ordered, *inter alia,* the settlement class certified as follows:

> All of those employees laid off on or about February 27, 2015, and thereafter, as the reasonably foreseeable consequence of the plant closing, who suffered an "employment loss" as defined by the Warn Act, who do not opt-out of the Settlement Class ("Settlement Class Members").

[ECF 30 at 2]. A hearing for final approval was scheduled for September 27, 2016. (*Id.* at 3).

The Class Notices were mailed to the last known addresses of each of the 1,430 Settlement Class Members on April 22, 2016. *See* Declaration of M. Vance McCrary, ¶ 9 (the "McCrary Decl.") [ECF 33-1]. The Class Notice advised that June 24, 2016, was the deadline for class members to object to the proposed settlement or to opt out. [ECF 33-5 at 1]. As of that date, there were no objections to the proposed settlement, and only eight opt-outs.[4]

On September 19, 2016, Plaintiff filed the instant motion, and oral argument on the merits of the settlement agreement was held on September 27, 2016. No parties or Settlement Class Members objected to the motion at the hearing.

### The Proposed Class Action Settlement Agreement

The proposed class action settlement agreement contains the following material terms:

- Defendant has agreed to pay the sum of four hundred seventy-two thousand dollars ($472,000.00) (the "Settlement Amount") for distribution to Class Members. Though Plaintiff argues that $3,000,00.00 is the maximum liability to which Defendant could

---

[4]      The eight opt-outs were: Gerthy Bijoux; Alisa Parker; Roberto Rodriguez; Lourdes Santos; Jackie Stevens; Elena Zorrilla; Mayerlin Zorrilla; and Mery Zorrilla. On October 21, 2016, this Court received an opt-out form from Tyrina Fulcher. [ECF 36].

have been subject, the maximum actual recovery was limited to $472,000.00, the total remaining funds held in escrow as part of Defendant's guilty plea to several felonies.[5]

- Five thousand dollars ($5,000.00) of the Settlement Amount shall be paid to Representative Plaintiff Jessica Rodriguez, for her service to the Class and the time and effort spent litigating this action.

- One-third of the remaining Settlement Amount, totaling the sum of one hundred fifty-five thousand, six hundred sixty-six dollars and sixty-seven cents ($155,666.67), and reasonable costs up to ten thousand dollars ($10,000.00), will be paid to The Gardner Firm, P.C. and Lankenau & Miller, LLP ("Class Counsel"), contingent upon approval of the class settlement, for attorneys' fees and costs.

- The remaining Settlement Amount will be distributed evenly to those Settlement Class Members who did not opt-out of the settlement.

Notice of these material terms was provided to all potential Settlement Class Members pursuant to procedures stipulated in the preliminarily approved class action settlement. As of the date of the final approval hearing, no objections had been lodged to any of the proposed class action settlement terms.

**DISCUSSION**

Consistent with Rule 23, when granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable, and adequate. *See* Fed.R.Civ.P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482

---

[5]     Defendant pleaded guilty to felonies including the offense of Corrupt Organizations and Medicaid Fraud, and the only money it has remaining is held in an escrow account established pursuant to a plea agreement with the Commonwealth of Pennsylvania. The $472,000.00 settlement amount in this case represents the entirety of the funds remaining in the escrow account.

(3d Cir. 1995).  "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Ltg.*, 55 F.3d 768, 784 (3d Cir. 1995).  In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals set forth factors (often called the "*Girsh* factors") a district court should consider when reviewing a proposed class action settlement.  The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157).  No one factor is dispositive.  *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit Court identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).  These *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1)  the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and

> other factors that bear on the ability to assess the probable outcome
> of a trial on the merits of liability and individual damages;
> (2)  the existence and probable outcome of claims by other classes
> and subclasses;
> (3)  the comparison between the results achieved by the settlement
> for individual class or subclass members and the results achieved
> or likely to be achieved for other claimants;
> (4)  whether class or subclass members are accorded the right to
> opt out of the settlement;
> (5)  whether any provisions for attorneys' fees are reasonable; and
> (6)  whether the procedure for processing individual claims under
> the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350.  Only the *Prudential* factors relevant to the litigation in question need be addressed.  *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and only the relevant *Prudential* factors in its review of the proposed class action settlement.

### *Girsh* Factors

1. *The complexity, expense and likely duration of the litigation*

Needless to say, had this settlement not been reached, this matter would have proceeded to trial to determine liability of Defendant and damages, if any.  The continued prosecution of Plaintiff's claims against Defendant would have required significant additional expense to the Class and a substantial delay before any potential recovery.  Further, no matter the outcome of a trial, it is likely that either one or all of the parties would have appealed, leading to further litigation costs or delay in any realized recovery.  Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement.  *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

2.      *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class."  *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)).  "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'"  *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).  A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy.  *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, Defendant identified 1,430 individuals who meet the Class definition.   The individuals identified as potential Class members were mailed notices and Class forms.  As of the date of this Order, no Class member has objected to the proposed settlement, and only nine Class members exercised their right to opt out. Consequently, this factor is persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (finding that a low number of objectors and opt-outs strongly favors approval of the settlement).

3.      *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant*, 264 F.3d at 235.  When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537

(3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement for more than a year. Prior to reaching a settlement, the parties exchanged initial disclosures, written discovery requests and responses, voluminous document production, non-party discovery, and participated in a mediation. (McCrary Decl ¶ 6). As a result of the extensive proceedings that preceded the parties' settlement, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

### 4. The risks of establishing liability

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

In this case, Defendant denied liability. Because the settlement negotiated was for the remaining amount of $472,000.00 held in escrow, Plaintiff has, through settlement, obtained 100% of the amount Plaintiff could have reasonably recovered if successful in establishing liability. Were this case to proceed, it is possible that Plaintiff may not have established Defendant's liability and, therefore, no recovery would have been obtained for the Settlement Class Members. The proposed settlement avoids the risk that Defendant is found not liable. Thus, this Court finds that this factor weighs in favor of approval.

### 5. *The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. As with the risk of establishing liability factor, the proposed settlement will allow the Settlement Class Members to obtain the remaining $472,000.00 held in the escrow, which is the maximum amount of potential recovery Plaintiff and the Settlement Class Members could hope to obtain. Were this case to proceed, it is possible that Plaintiff may have failed to establish any damages, or may have established less than $472,000.00 in damages, even if she had prevailed on the merits. In light of this uncertainty as to the amount of any potential damages award, the settlement amount of $472,000.00 is a good result. Accordingly, this factor weighs in favor of approval.

### 6. *The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. Plaintiff concedes that there is minimal risk in maintaining the class action through trial because WARN Act cases are particularly amenable to class treatment. Therefore, this factor is neutral.

### 7. *The ability of defendants to withstand a greater judgment*

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. The parties have represented that the only funds available to satisfy the Class members' claims are the $472,000.00 held in escrow. Accordingly, Defendant is not able to withstand a greater

judgment, and a greater judgment would not yield any additional recovery for Plaintiff or the Settlement Class Members.  Accordingly, this factor weighs in favor of approval.

### 8-9.  *The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  Even if Plaintiff were completely successful in litigating this case, Defendant's maximum liability would be $3,000,000.00.  (McCrary Decl. ¶ 10).  However, as previously noted, even if Plaintiff obtained a judgment for the maximum amount, recovery would be limited to $472,000.00, the amount remaining in escrow of the now-defunct Defendant.  This settlement amount is the best possible recovery to be had in this case.  Thus, these factors weigh in favor of approval.

### Relevant *Prudential* Factors

#### 1.  *Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings.  Pretrial discovery had been completed and, as such, the parties were in a position to fully evaluate the strengths, weaknesses, and merits of their respective case.  The advanced development of the record weighs in favor of approval.  *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the

experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

### 2. Results achieved by settlement for individual Settlement Class Members versus the results achieved – or likely to be achieved – for other claimants

As described in the analysis of the *Girsh* factors, this factor weighs in favor of approval since only nine Class Members opted out and, as stated, the proposed class action settlement agreement obtains the full amount recoverable for the Class Members.

### 3. Whether Class members are afforded the right to opt out of the settlement

As part of the approved Class Notice process, notices were sent out on April 22, 2016, advising Class members of the deadline and opportunity to opt out by June 24, 2016.  As of the date of this Order, only nine members of the Class have opted out.  Therefore, this factor weighs in favor of approval.

### 4. Whether any provisions for attorneys' fees are reasonable

As part of the approved Class Notice process, Class members were advised that Plaintiff would seek an award of attorneys' fees of no more than one-third of the Settlement Amount.  No potential member of the Class objected to such an award.  Moreover, for the reasons discussed in greater length below, the attorneys' fees and expenses sought and agreed to in this case are reasonable.  Thus, this factor weighs in favor of approval.

To summarize, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon the consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

### Request for Attorneys' Fees and Expenses

As compensation for their legal services and efforts, Class Counsel have requested that this Court approve the portion of the settlement which provides for reimbursement of attorneys' fees in the amount of $155,666.67, and for costs not to exceed $10,000.00  This is an amount contemplated and agreed to in the settlement agreement, and disclosed to Class members.  As noted above, the notice provided to potential Class members expressly informed them that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount.  To date, no Class member has objected to the settlement or to the requested amounts for fees and costs, which evidences both a satisfactory result, and a reasonable reimbursement of fees and costs.  In support of their request, counsel rely upon the declaration of M. Vance McCrary, at attorney employed by The Gardner Firm, P.C., that summarizes the time and the expenses incurred on behalf of the Class.  (*See* McCrary Decl. ¶¶ 25-26); [33-4].

Rule 23(h) provides "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Regarding attorneys' fees requests, the Third Circuit Court of Appeals has found that these requests are "generally assessed under one of two methods: the percentage-of-recovery ("POR") approach or the lodestar scheme."  *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The POR approach "applies a certain percentage to the settlement fund," while the lodestar method "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services."  *Id.* (quoting *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009). The Third Circuit has noted that the POR method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure."  *Id.* (citations and quotations omitted).  The lodestar method

"is more commonly utilized in statutory fee-shifting cases [] where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation . . . ."  *Id.* (citations and quotations omitted).  In POR cases, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award."  *Id.*

Class Counsel seeks an award of attorneys' fees under the POR method.  To determine what constitutes a reasonable POR award, the district court must consider the following ten factors:  "(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement."   *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) (internal citations omitted).

*1.  Size of the fund created and the number of beneficiaries*

The Settlement Amount in this case consists of the remaining $472,000.00 held in escrow of the now defunct Defendant, and is the best possible recovery Plaintiff and the Settlement Class Members could have hoped for in this case.  It will benefit more than 1,400 former employees.  This factor weighs in favor of approval.

### 2. Presence or absence of substantial objections by members of the Class

The notice sent to the Class members explained that counsel would request to be awarded one-third of the Settlement Amount (minus $5,000.00 to be awarded to Plaintiff).  The notice further explained the right of each Class member to object to the settlement, the manner in which to do so, and the right of each Class member to appear at the September 27, 2016 hearing.  No objections to the proposed attorneys' fees were received, and no Class members appeared at the hearing to object.  Therefore, this factor weighs in favor of approval.

### 3. Skill and efficiency of the attorneys involved

Plaintiff and the Class members were represented by highly skilled and experienced counsel. Lankenau & Miller has been appointed class counsel in more than 90 WARN Act cases. (McCrary Decl. ¶¶ 16-23).  The Gardner Firm has served as class counsel in more than 40 WARN Act cases.  (*Id.*).  Class Counsel's experience makes them well-suited to litigate this case and to have negotiated the best possible resolution.  This factor weighs in favor of approval.

### 4. Complexity and duration of the litigation

WARN Act class action litigation is highly specialized and particularly complex.  Steven Ludwig, Esquire, at Fox Rothschild LLP, who led the defense in this case, very ably represented Defendant in this matter.  Since the inception of this litigation, Class Counsel interviewed Plaintiff and other former employees regarding the facts surrounding the terminations and their potential claims, researched the law, and filed her complaint.  The parties exchanged initial disclosures, written discovery requests and responses, voluminous document production, non-party discovery, and ultimately attended mediation.  In short, this case was complex and the litigation was neither quick nor easy.  Consequently, this factor weighs in favor of approval.

### 5. Risk of nonpayment

Class Counsel took this case on a contingent fee basis, and commenced working on this case in early 2015 without any compensation, and with the risk of not receiving compensation or reimbursement for expenses unless successful.  WARN Act cases are particularly risky cases to take on a contingent basis, since defendants are generally distressed companies in financially troubled conditions (thus leading to the necessity for mass layoffs or a plant closing). In this case, Defendant had ceased operations and terminated its employees by the time Class Counsel decided to represent Plaintiff and Class members, and seek recovery on their behalf.  Thus, this factor weighs in favor of approval.

### 6. Amount of time devoted to the case by counsel

As of September 15, 2016, Class Counsel spent approximately 264 hours litigating this case, not including local counsel time.  As of that date, the attorneys' fees accrued totaled $143,147.18.  [ECF 33-4].  Since that date, additional expenses were incurred when Class Counsel prepared for and attended the September 27, 2016 hearing.  Class Counsel, in its September 19, 216 motion, estimated that an additional 30 hours would be required to conclude this case.  Undisputedly, a reasonable amount of hours is spent in preparing, litigating, and ultimately resolving a case of this complexity.  Consequently, this Court finds that the amount of time devoted to this case weighs in favor of approval.  *Cf. Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *12 (E.D. Pa. May 19, 2005) (finding that the time devoted factor weighed against approval where the 17,000 hours of attorney work did not justify fees in the amount of approximately $20 million).

### 7. *Awards in similar cases*

An award of one-third of the common fund as an attorney's fee to class counsel is common in WARN Act class action settlements. "[I]n more than 30 WARN actions class counsel was awarded a one-third fee." *Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *9 n.2 (S.D.N.Y. Oct. 28, 2011) (collecting cases). This factor weighs in favor of approval.

### 8. *Value of benefits attributable to the efforts of class counsel relative to the efforts of others*

Class Counsel were the only ones investigating the WARN Act claim at issue in this case. However, some value in this case is attributable to the Commonwealth of Pennsylvania, which ensured that Defendant placed funds above what it owed to Pennsylvania into escrow in order to satisfy any claims brought by its former employees. This decision prevented Defendant from expending the funds while Class Counsel prosecuted this matter. This Court notes, however, that it was this case and the related unpaid wages and overtime pay cases filed against Defendant that alerted the Commonwealth of the plight of Defendant's former employees and caused the Commonwealth to include a provision in the plea agreement entered into with Defendant to create the aforementioned escrow account. [ECF 33-2 ¶ 10]. While some value to the Class Members is attributable to the Commonwealth, and not directly to Class Counsel, the bulk of Class Counsel's efforts weighs towards approval.

### 9. *Percentage fee that would have been negotiated*

Plaintiff and Class Counsel entered into a contingent fee arrangement, wherein Plaintiff agreed that one-third of any fund created would be paid in attorneys' fees, if approved by the Court. Thus, Class Counsel seeks approval of the one-third fee agreed to when this matter was initiated. This factor supports approval.

*10. Innovative Terms of the Settlement*

The settlement agreement does not contain any innovative terms.  This factor is neutral as it neither weighs in favor of or against approval.

**Lodestar Cross-Check**

As noted, in percentage-of-recovery cases such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan*, 667 F.3d at 330.  Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009).  Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed in the McCrary Declaration, the hourly rates for Class Counsel are well within the range of what is reasonable and appropriate in this market.  That is, the hourly charged rates for the attorneys are the same as the regular current rates charged for their services in

standard non-class matters, including contingent and non-contingent matters.  The attorneys have substantial experience in WARN Act cases, and their hourly rates are also within the range charged by attorneys with comparable experience levels for litigation of a similar nature.  *See, e.g.*, *Barel v. Bank of Am.*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009).

"In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."  *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998).  As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours.  *Id*. at 434.  Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id*. at 434 (citations omitted).   Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours."  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

In the McCrary Declaration, Class Counsel included a detailed summary of the hours worked by the partners, associates, and professional support staff involved in this litigation.  These summaries were prepared from contemporaneous, daily time records regularly prepared and maintained by the respective firms.   Class Counsel and support staff are claiming approximately 264 hours for work done at an average hourly rate of approximately $542.[6]  After reviewing the McCrary Declaration and the attached supporting documentation, it appears that

---

[6]      The hourly rates ranged from $300 per hour to $695 per hour.

Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, the lodestar for Class Counsel is, as of September 15, 2016, $143,147.18, for approximately 264 hours of attorney work. Class Counsel, in its September 19, 216 motion, estimated that an additional 30 hours would be required to conclude this case. Assuming this work was performed at the average billing rate for the hours billed as of September 15, 2016, an additional $16,260.00 in attorneys' fees would have accrued under the lodestar analysis, for a total of $163,407.18, an amount above the one-third fee Class Counsel seeks here. Class Counsel also submitted documentation showing reasonable expenses, as of September 15, 2016, totaling $7,397.39, and requests an award of costs not to exceed $10,000.00, to account for any additional costs accrued after September 15, 2016. Class Counsel's request for $155,666.67 in fees and no more than $10,000.00 in costs is less than the estimated calculated reasonable lodestar amount. This Court has also considered the fact that Class Counsel took this matter on a contingent basis, *see Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), there were no objections to the amounts requested by any potential or actual Class members, *see Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 124 (E.D. Pa. 2005), and that through the settlement, Class Counsel has obtained for the Settlement Class Members the maximum amount to which the Settlement Class Members could have hoped to obtain under the circumstances of this case. Therefore, the lodestar cross-check supports approval of the requested attorneys' fees.

Having considered the relevant factors and the lodestar cross-check, this Court approves the request for attorneys' fees and costs.

**Individual Settlement Award**

Class Counsel also seek approval of a $5,000.00 individual settlement award for Representative Plaintiff Jessica Rodriguez, for her willingness to undertake the risks and the burden of this litigation. "Incentive awards are not uncommon in class action litigation. . . ." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These payments "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id.* (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to Settlement Class Members if the Class representative had not stepped forward and prosecuted this matter to the current resolution. In doing so, Plaintiff devoted time and energy to the litigation, including assisting with discovery and at the mediation. The requested $5,000.00 is well within the range of awards made in similar cases. *See Barel*, 255 F.R.D. at 402-03 (awarding $10,000.00 individual award); *McGee v. Continental Tire North Am., Inc.*, 2009 WL 539893, at *18 (D.N.J. Mar. 4, 2009) (awarding $3,500.00 individual award). Class members were notified that Class Counsel would request an award for Plaintiff in this amount and no Class member objected. Accordingly, the Court approves the individual award of $5,000.00 to Plaintiff.

**CONCLUSION**

For the reasons stated herein, this Court grants final approval of the proposed class action settlement, awards Class Counsel reasonable attorneys' fees in the amount of $155,666.67 and reimbursement of expenses not to exceed $10,000.00, and awards the sum of $5,000.00 to the

Class Representative, Jessica Rodriguez.  An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO
*Judge, United States District Court*